CITY OF DOVER, Plaintiff,

v.

James HUNTER, Mary Hunter and Lucian Szczepanski, Defendants,

Cendant Mortgage Services, Intervenor.

C.A. No. 01T–01–003 JTV.

Superior Court of Delaware, Kent County.

Submitted Nov. 21, 2003.

Decided Feb. 27, 2004.

---

William W. Pepper, Sr., Schmittinger & Rodriguez, P.A., Dover, DE, for Plaintiff.

Constance F. Malmberg, III, Young & Malmberg, P.A., Dover, DE, for Defendant Lucian Szczepanski.

John W. Paradee, Prickett Jones & Elliott, P.A., Dover, DE and Robert B. Snowden, Cureton Caplan, P.C., Delran, NJ, for Cendant Mortgage Services.

## ORDER AND OPINION

VAUGHN, Resident Judge.

Intervenor Cendant Mortgage Services ("Cendant") has filed a motion for summary judgment in which it seeks an order setting aside a monition tax sale of premises at 5 Kensington Court, Dover, Delaware. The sale in question was held on March 27, 2001 and confirmed on April 6, 2001. The motion is opposed by the city of Dover ("the City"), which initiated the monition proceeding to collect city property taxes, and Intervenor Lucian Szczepanski, who purchased the property at the sale.

### *Facts*

On April 27, 1997, the defendants, James and Mary Hunter, obtained a first lien mortgage on a house and lot at 5 Kensington Court, Dover, Delaware from PHH Mortgage Services Corp. The mortgage was in the original principal amount of $168,266. Through assignments, the mortgagee came to be Cendant Mortgage Services.

The property at 5 Kensington Court is part of The Meadows subdivision. The record is not entirely clear as to when The Meadows subdivision was laid out, but it is clear that it was at some point prior to 1997. When 5 Kensington Court was laid out as a separate lot, Kent County ("the County") assigned the property the following tax parcel number: # ED–05–067.05–02–35.00/000 (underline added).

The City typically gives a property the same number on its tax records as the number assigned by the County. In the 1990's, however, if for some reason there was delay on the County's part in giving a new lot a tax parcel number, the City, at least on some occasions, gave the lot a number without waiting to see what number was given by the County. Because of this practice, there were some properties in the City (the number is not specified in the record) which had different County and City tax numbers. This happened to 5 Kensington Court. Its City tax parcel number was # ED–05–067.05–02–36.00/000. In other words, on the County's records, the property was number 35, and on the City's records, it was number 36.

Until 1999, payment of the annual property taxes on 5 Kensington Court was made by sending the payment to the City Tax Assessor's Office. After the Hunters' obtained their mortgage in 1997, the payments were made by the mortgage company through escrow. The practice of the employees in the Assessor's Office was to post tax payments to the property based upon the property owner's name and the property address or location. Accordingly, when the employees received the tax payment on 5 Kensington Court, they properly posted the payment to that lot.

Commencing with the tax year 1999, Cendant began using a commercial tax service, First American. First American sent the City a request for tax billing data on all of the properties for which its customers held taxes, including Cendant. It then made arrangements to transmit the taxes to the City in bulk. Apparently this was all done by computer. This system relied upon the tax parcel number, not the property owner or address, for property identification. In addition, when this system was used, employees in the Assessor's Office were no longer involved in the manual posting of payments as they had been before.

First American was aware of the fact that the City used a different tax parcel number for the property at 5 Kensington Court than the County. Nonetheless, when the taxes which Cendant held for 5 Kensington Court were transmitted to the City, they were designated for tax parcel number 35 and, accordingly, applied to 7 Kensington Court. This happened again in 2000. As a result, the City's records reflected that the taxes on 5 Kensington Court, tax parcel number 36, were unpaid for 1999 and 2000.[1]

In November 2000, Cendant commenced mortgage foreclosure proceedings against 5 Kensington Court because the Hunters' defaulted on the mortgage.

In approximately early 2001 the City revised its records to make the tax parcel numbers the same as the County's for all properties. As a result, the tax parcel number for 5 Kensington Court was changed from 36 to 35. For the years 1999 and 2000, however, the City's records continued to reflect the taxes for 5 Kensington Court as unpaid.

On January 16, 2001, the City commenced a monition tax sale proceeding against 5 Kensington Court for unpaid taxes for the years 1999 and 2000. The papers commencing the monition proceeding identified the property as tax parcel number 35. They showed the amount owed as $1,968.79. An execution writ was issued on February 13, 2001 which identified the property as tax parcel number 36. A Sheriff's tax sale was scheduled for March 27, 2001. A notice of the Sheriff's sale shows the tax parcel number was initially shown on the notice as 36 but was changed by hand to 35.

On March 13, 2001, the City sent Cendant due notice of the sale in compliance with Superior Court Civil Rule 69(g). The notice was sent both to Cendant and the attorney representing it in the then still pending mortgage foreclosure proceeding. What happened after that leading up to and following the tax sale is disputed, but for purposes of this motion I must view the facts in the light most favorable to the non-moving parties. They are that by March 23 a paralegal in the attorney's office and Kelly Newman, a Cendant employee in its mortgage foreclosure office, were aware of the sale. At about 8:30 a.m. on the 27th, the paralegal at the attorney's office spoke with Yvette Sanchez, another Cendant employee in its mortgage foreclosure department, who confirmed that Cendant was aware of the tax sale which at that point was scheduled to take place in an hour and a half, at 10:00 a.m. A Cendant note documenting the phone call indicates that Yvette informed the paralegal that "we are aware of same and we are handling the situation." The record does not indicate that anything else occurred between then and 10:00 a.m., and at that time the sale was conducted. The purchaser was Mr. Szczepanski for a bid price of $2,450.

Another Cendant note indicates that at some point on the 27th after the sale had occurred, Lynda, of Cendant's tax department, called the Cendant foreclosure department, and advised that "the property went to tax sale this morning, she is working on redeeming the sale since she has proof all of the taxes are pd. current." Accepting the facts in the light most favorable to the non-moving parties, I do not take the reference to taxes being paid current as being factually correct, because

---

1. Whether or not the City's records reflected that the 1999 and 2000 taxes on 7 Kensington Court had been paid twice, once from the money sent by Cendant and also by payment by the true owner, does not appear in the record.

the City's position is that Cendant paid the taxes on 7 Kensington Court in 1999 and 2000, not 5 Kensington Court, but as showing that the Cendant tax department was aware that the property had been sold shortly after the sale took place and that it thought that the taxes had been paid.

Shortly after the sale, either on the 27th or shortly thereafter, Linda Meyers, another representative from Cendant, spoke to the City Tax Assessor's office and also to counsel for the city. Counsel for the city explained the procedure for redeeming the sale, including that redemption must occur within 60 days of the sale and must include payment of a premium of 15% of the purchase price to the successful bidder.

A Cendant note dated April 5, 2001, includes the notation, "still need to redeem."

On April 6, 2001, no petition to set aside the sale having been filed, the sale was confirmed as a matter of course pursuant to Superior Court Civil Rule 69(d).

As a result of discussions between Cendant and the Assessor's Office after the sale, the Assessor's Office went back and credited the amounts which Cendant had paid in 1999 and 2000 to 5 Kensington Court. As a further result of those discussions, the Assessor's Office determined that the taxes which Cendant did pay in 1999 and 2000, the ones that were originally credited to 7 Kensington Court, were $159.72 less than the taxes owed on 5 Kensington Court for those years. This is because the taxes on 7 Kensington Court were a little less than the taxes on 5 Kensington Court. On April 19, 2001, Cendant paid and the City accepted this sum of $159.72. However, Cendant did not accomplish a redemption because it did not satisfy the requirements of a redemption. The party seeking to redeem must tender to the successful bidder the amount of his purchase price plus 15%, which was not done.

On June 21, 2001, Cendant took default judgment against the Hunters' in its mortgage foreclosure action. The amount owed at that time was $218,514.62.

In July 2001, Cendant paid the 2001 taxes on 5 Kensington Court, now reflected on the City's records as parcel no. 35.

On July 27, 2001, the Sheriff executed a deed conveying the property to Mr. Szczepanski, which was recorded on August 3, 2001.

While performing a bring-down lien search on the property in October 2001, Cendant discovered the deed to Mr. Szczepanski. In January 2002, it filed the motion to intervene in this proceeding.

No direct evidence on the current value of the property has been placed in the record. It is reasonable to infer, however, that it is worth more than $160,000.

### *Standard of Review*

Summary judgment should be rendered if the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[2] The facts must be viewed in the light most favorable to the nonmoving party.[3] Summary judgment may not be granted if the record indicates that a material fact is in dispute, or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application

---

2. Superior Court Civil Rule 56(c).

3. *Guy v. Judicial Nominating Comm'n*, 659 A.2d 777, 780 (Del.Super.1995) *Figgs v. Belle-vue Holding Co.*, 652 A.2d 1084, 1087 (Del.Super.1994).

of the law to the circumstances.[4] However, when the facts permit a reasonable person to draw but one inference, the question becomes one for decision as a matter of law.[5]

Under Superior Court Civil Rule 60(b)(1) a final judgment may be set aside for "mistake, inadvertence, surprise, or excusable neglect." Carelessness and negligence are not necessarily "excusable neglect."[6] A mere showing of negligence or carelessness without a valid reason may be deemed insufficient.[7] All the surrounding circumstances may be considered in determining the issue.[8] Excusable neglect has been described as that neglect which might have been the act of a reasonably prudent person under the circumstances.[9] However, negligence may be so gross as to amount to sheer indifference, and to open and vacate a judgment upon such excuse would cease to give meaning to the words "excusable neglect."[10]

Under Rule 60(b)(6) a final order may be set aside for "any other reason justifying relief from the operation of the judgment." Relief under Rule 60(b)(6) is an extraordinary remedy which requires a showing of "extraordinary circumstances."[11] In considering whether "extraordinary circumstances" exist, the Court should bear in mind that Rule 6(b)(6) "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice."[12]

### Contentions of the Parties

Cendant contends that the sale should be set aside under Rules 60(b)(1) and (6) because the price which Mr. Szczepanski paid at the sale was grossly inadequate when compared to the value of the property, the sale was inadvertently and improperly scheduled due to the City's failure to properly apply the taxes paid by Cendant to the correct property, and the City was equitably estopped from proceeding with the sale because Cendant relied upon the City's past practices in making the tax payments. Cendant further contends that the sale should be set aside because the City failed to comply with the statutory requirements for a monition sale, in that the monition papers failed to correctly state the amount of taxes owed and the papers were in conflict and defective on their face. Cendant further contends that the City's procedures violated its right to procedural and substantive due process.

The contentions of the City and Mr. Szczepanski, taken together, in opposition to Cendant's motion, are that Cendant waived any objection to the sale by not objecting to its confirmation prior to the confirmation date, that a confirmed sale

4. *Ebersole v. Lowengrub,* 180 A.2d 467, 470 (Del.1962).

5. *Wootten v. Kiger,* 226 A.2d 238 (Del.1967).

6. See *Cohen v. Brandywine Raceway Ass'n,* 238 A.2d 320, 325, (Del.Super.Ct.1968) (citing *Prell v. Amado,* 2 Ariz.App. 35, 406 P.2d 237, 238 (Ariz.Ct.App.1965)).

7. See *id.*

8. *Id.*

9. See *id.* (Citing *Tradesmens Natl'l Bank and Trust Co. v. Cummings,* 38 N.J.Super. 1, 118 A.2d 80 (App.Div.1955)).

10. See *Vechery v. McCabe,* 48 Del. 195, 9 Terry 195, 100 A.2d 460 (Del.Super.Ct.1953).

11. *Dixon v. Delaware Olds, Inc.,* 405 A.2d 117 (Del.1979); *Jewell v. Division of Social Services,* 401 A.2d 88 (Del.1979).

12. *Jewell* at 90, quoting *Klapprott v. United States,* 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266, modified, 336 U.S. 942, 69 S.Ct. 398, 95 L.Ed. 1099 (1949).

cannot be inquired into or its validity challenged, that Cendant has failed to establish any ground for relief under Rule 60(b), that Cendant's motion is untimely, that Cendant failed to act as a reasonably prudent person, that setting aside the sale would cause irreparable injury to Mr. Szczepanski, that Cendant's motion should be denied because of the strong public interest in the stability of confirmed tax sales, that the statutory requirements for tax sales were complied with, that there is no mistake or other cause for setting aside the sale, that the City was not equitably estopped from conducting the sale, and that there has been no violation of any right of due process.

### Discussion

In support of its position that a confirmed Sheriff's sale cannot be inquired into or its validity challenged, the City relies upon *Deibler v. Atlantic Properties Group, Inc.*,[13] *Swiggett v. Kollock*,[14] and the following provision from 2 *Woolley on Delaware Practice* § 1107 (1906):

**Confirmation.** When land is sold under a *vend. exp.* or other appropriate execution process and there are no objections made to the sale, the sale is confirmed at the return term of the writ, as a matter of course, without any act or decree of the court; and a sale so confirmed is final in its character and effect, and cannot afterwards be inquired into, nor can its validity be controverted collaterally. By the rules of the court, applications to set aside sheriffs' sales must be made on or before the first Thursday of the term to which the writs are returned, and all sales not objected to on or before the first Thursday, are on the first Friday, confirmed as a matter of course. (footnotes omitted)

Since the sale was duly confirmed without objection on April 6, 2001, the City contends, the sale is final.

■ In *Deibler* the Delaware Supreme Court observed that Judge Woolley's statement regarding the effect of confirmation continues to be good law.[15] It has long been recognized that objections to a Sheriff's sale are waived if not asserted prior to confirmation.[16] There is a strong public interest in the finality of a confirmed Sheriff's sale. However, the rule that a confirmed sale may not be inquired into is not absolute. As the Supreme Court also observed in *Deibler* objections to confirmation of a sale are waived if not filed before the confirmation date, "unless the court finds lack of notice or other basis to relieve the party of the consequences of unexcused delay." [17]

■ The Supreme Court has recognized that the Superior Court has broad, equitable power to control judicial sales to protect parties from injustice.[18] It has also recognized that relief from a confirmed Sheriff's sale may be available under Rule 60(b).[19] Rule 60(b) contains no exclusion for confirmed tax sales. I have no doubt that the Court's power to control judicial sales includes the power to grant relief after confirmation, where necessary to

---

13. 652 A.2d 553 (Del.1995).

14. 3 Houst. 326 (1866).

15. The timing of confirmation has been modified because of the abolition of terms of court.

16. *Swiggett v. Kollock*, 3 Houst. 326, 332 (1866).

17. 553 A.2d at 556.

18. *Burge v. Fidelity Bond and Mortgage Company*, 648 A.2d 414 (Del.1994)

19. *Robins v. Garvine*, 136 A.2d 549 (Del. 1957).

avoid injustice, because of mistake or other just cause.

■ In this case, the City's practice, back in the 1990's, of generally following the County's tax parcel numbering system but assigning different numbers to some properties, created a formula for confusion which made what occurred here foreseeable. There may have been a legitimate administrative need to assign a number to a parcel without waiting until the County had done so where there was some delay on the County's part. But if the City had conformed its number to the County's number once the County did assign a number, what occurred here would not have happened. Since the City did perform the task of matching its tax numbers with the County's in 2001, a tax sale under circumstances like those here should not recur.

It is excusable that an employee in a mortgage tax department would not catch the fact that the County and City tax parcel numbers had a one digit difference between them. And although First American was aware that 5 Kensington Court had different County and City tax numbers, it is understandable that an error could occur given the high volume of properties which it was servicing. The City argues that Cendant was given tax data on parcel 35, 7 Kensington Court, in 1999 and 2000 because that is what was asked for by Cendant through its agent, First American. That position is understandable. However, Cendant reasonably thought that it paid the taxes on 5 Kensington Court in those years.

Cendant's failure to file a formal objection to the sale with this Court before confirmation occurred can be explained, at least in part, by the fact that Cendant was made aware of the redemption procedure by which it could reverse the sale.

When the facts are viewed in the light most favorable to the non-moving parties, as they must be for purposes of deciding this motion, however, there is neglect on the part of Cendant. It is obvious that it should have followed up more diligently to take all the steps necessary to redeem the property on behalf of its mortgagors, the Hunter's, and to verify that the redemption was effective.

Payment of the additional sum of $159.72 in April 2001, however, evidences that Cendant was attempting to correct the problem. Perhaps most interestingly, in July 2001 Cendant paid the 2001 taxes on the property, as though there were no problem. This fact only makes sense if Cendant thought, albeit mistakenly, that the problem created by the mix-up over the 1999 and 2000 taxes and the tax sale had been cured.

Although Mr. Szczepanski argues that setting aside the sale would cause him irreparable harm, no injury has been set forth which the Court considers to be irreparable.

The status quo leaves Cendant divested of its security. There is no evidence that the debt is collectible from other assets of the Hunter's. The City received from Cendant amounts of money equivalent to the full amount of the taxes on 5 Kensington Court for 1999 and 2000 (and 2001). Mr. Szczepanski, who is completely blameless in this case, has, nonetheless received a windfall at the expense of Cendant.

After considering the contentions of all parties and all of the facts and circumstances, I conclude that Cendant's conduct, taken as a whole, constitutes excusable neglect sufficient to set aside the sale under Rule 60(b)(1). I also conclude that the facts constitute "extraordinary circumstances" for setting aside the sale under Rule 60(b)(6). Accordingly, the sale will be set aside.

Rule 60(b) provides that the grant of a motion under Rule 60 may be subject to such conditions as the Court deems just. In this case, Cendant will be required to make Mr. Szczepanski completely whole. This will include payment of his purchase price for the lot plus the 15% of purchase price which he would have received if the property had been properly redeemed, and all expenses, attorney's fees, and such other elements of damages as he may reasonably submit, and interest.

Mr. Szczepanski should serve and file a statement of all damages claimed by him within 60 days. The Court will then decide whether a hearing on the damages claimed is necessary.

Cendant's motion for summary judgment is *granted,* subject to the terms just stated. **IT IS SO ORDERED.**