# SUPERIOR COURT
## OF THE
## STATE OF DELAWARE

**RICHARD F. STOKES**　　　　　　**SUSSEX COUNTY COURTHOUSE**
**JUDGE**　　　　　　　　　　　　**1 THE CIRCLE, SUITE 2**
　　　　　　　　　　　　　　　　**GEORGETOWN, DE 19947**
　　　　　　　　　　　　　　　　**TELEPHONE (302) 856-5257**

June 10, 2015

John A. Sergovic, Jr.　　　　　　　Marinos P Baris and Despina Baris
Sergovic, Carmean & Weidman, P.A.　*Pro se*
P.O. Box 751　　　　　　　　　　　9608 Hickoryhurst Drive
142 East Market Street　　　　　　Nottingham, Maryland 21236
Georgetown, Delaware 19947　　　　Defendants
Attorney for Plaintiff

　　　RE: *Rehoboth-By-The-Sea v. Marinos P. Baris and Despina Baris*
　　　<u>C.A. No. S15C-02-014 RFS</u>

Dear Parties:

　　　Before the Court is Defendants Marinos P Baris' ("Mr. Baris") and Despina

Baris' ("Mrs. Baris") (collectively "Defendants") Motion to Vacate Default

Judgment. In their joint motion, Defendants make several assertions justifying why

1

default judgment should be vacated. These include the following: (1) they were never served any documents related to their litigation with Rehoboth-By-The-Sea Realty Company ("Plaintiff"); (2) that the signature presented by Plaintiff's counsel regarding service does not belong to Mr. or Mrs. Baris; and (3) the Defendants did not receive sufficient notice of the change in hearing date, which was moved from April 17, 2015 to April 16, 2015.

Though the Court recognizes that litigation can be stressful, especially for one representing himself *pro se*, and does not downplay the personal difficulties associated with both caring for a disabled loved one and eviction from one's vacation property, those reasons alone are insufficient justification to set aside this default judgment. For the reasons that follow, Defendants' Motion to Vacate is **DENIED**.

## FACTS

Plaintiff is a Delaware corporation, located at 2400 Highway One, Dewey Beach, Delaware 19971. Defendants are Maryland residents, their home address being 9608 Hickory Hurst Drive, Nottingham, Maryland 21236. On or about November 7, 2008, two lots located within a development owned by Plaintiff were assigned to Defendants by an Assignment of Leases. The original lease related to the first lot ("Lot 16") created a term that commenced on May 1, 1965 for sixty (60) years, with varying annual lease rates. Similarly, the original lease related to the

2

second lot ("Lot 15") created a term that commenced on May 1, 1985 for forty (40) years, at varying annual lease rates. Both of the original leases for Lot 16 and Lot 15 end on April 30, 2025.

Under the terms of the two original leases,[1] the lessees of said leases were to pay Plaintiff the amounts of the annual ground rents according to a formula stated in the lease documents. The lessees were further obligated to pay additional rent and costs.[2] On February 12, 2015, Plaintiff filed a complaint ("Complaint") in Superior Court, primarily asserting Defendants had become "delinquent in their payment of

---

[1] Because the leases, which are a type of contract, were eventually assigned to Defendants, the terms of the two original leases apply to them. *See Bhole, Inc. v. Shore Inv., Inc.*, 67 A.3d 444, 452 (Del. 2013); *Chrysler Corp. v. Airtemp Corp.*, 426 A.2d 845, 852 (Del. Super. 1980) (citing Restatement (First) of Contracts § 164 (1932)).

[2] According to Paragraph 6 of the original leases, the lessees were obligated to pay: "all such duties and taxes . . ., annual, current or other assessments, general or special, ordinary or extraordinary, or installments thereof, for improvements commenced or completed during the term of the lease . . .; water and sewer taxes, rents, rates and or meter charges, charges for water meters, charges for setting, resetting and repairing meters and for installing and connecting sewers in, upon or for the premises demised herein, or any building now standing upon which may hereafter be erected . . . and any and all sums, charges, payments or licenses, either laid, levied, assessed, charged, or imposed upon or growing or becoming due and payable during the term of this lease, for or by reason of said demised premises, any improvements thereon . . . by virtue of any present or future law or regulation of the United States . . ., . . . Delaware[,] County of Sussex or Town of Rehoboth, or of any department . . .; and each and every other sum . . . of money which in any event . . . may become due and payable by said Lessee, all of which payments and sums in addition to the basic rent provided for in paragraph 4 hereof are hereinafter called 'additional rent.' All 'additional rent', [sic] is hereby made and declared to be rent, and to be due and payable as rent by the Lessee under this lease at the time and in the manner provided herein.

rent and additional rent under the Original Leases [o]n or about March 2014."[3] The Complaint went on to maintain that Plaintiff had provided Defendants notice of their delinquency, and that they had sixty (60) days to cure their breach.[4]

The Complaint further claimed Defendants failed to cure the aforementioned breaches within the sixty (60) day time period. Further notice was then provided advising Defendants the leases would irrevocably terminate in sixty (60) days from the date of a letter (drafted and sent in accordance with the original lease agreements) ("Termination Notice") dated December 4, 2014.[5] As such, the leases terminated on February 2, 2015.

The Complaint noted Defendants were still in possession of Lot 16 and Lot 15, and that the total amount due to Plaintiff was $4,748.13. Plaintiff's Complaint requested: (1) Defendants be ejected from the property pursuant to 10 *Del. C.* § 6701; (2) this Court enter a declaratory judgment determining that Plaintiff is entitled to possession of the lots and all improvements thereon since it properly terminated the leases; and (3) Plaintiff is entitled to damages in the amount of past due rents,

---

[3] Compl. ¶ 9.

[4] Compl. ¶ 10 (citing Letter Notice dated September 24, 2014).

[5] Compl. ¶ 11.

4

additional rents, late fees, and attorneys fees, all yet to be paid.[6]

## PROCEDURAL POSTURE

On March 18, 2015, Plaintiff filed a Motion for Default Judgment.[7] The motion declared Plaintiff had filed its Complaint on February 12, 2015, that Defendants were subsequently served, pursuant of 10 *Del. C.* § 3104 (d) (3) on February 23 of the same year, and had not filed a response.[8] The motion was scheduled for argument on April 17, 2015, but, was later rescheduled for April 16, 2015 on April 7, 2015, when notice thereof was sent to Defendants. Defendants' failed to appear on April 16, 2015 to defend against the motion, and default judgment was entered in favor of Plaintiff. On May 8, 2015, Defendants filed a joint Motion to Vacate.[9] The Court has interpreted that motion as a Rule 60 (b), relief from judgment, motion.

## STANDARD OF REVIEW

"A motion to open a default judgment pursuant to Superior Court Civil Rule

---

[6] Compl. ¶¶ 15–22.

[7] Pl.'s Motion for Default Judgment (the motion further sought an Inquisition Hearing to determine damages).

[8] *Id.*

[9] Plaintiff claims Mr. Boris has provided no documentation demonstrating his authorization to act as a legal representative for his wife. This is of no consequence since it does not impact my decision regarding their right to relief from judgment.

60 (b) is addressed to the sound discretion of the Court."[10]  There is, however, a strong public policy in Delaware for courts to decide cases on the merits.[11]  As such, any doubt as to whether a case should be reopened, a default judgment set aside, will be resolved in favor of the Defendants when determining whether they have satisfied the requirements necessary to grant relief.[12]  Though "the rule will be given a liberal construction because of this underlying policy, the burden is upon [the Defendants] to establish the basis for relief."[13]

## DISCUSSION

## Relief from Judgment

According to Superior Court Civil Rule 60 (b), "[o]n motion and upon such terms as are just, the Court may relieve a party . . . from a final judgment . . . for the following reasons: (1) Mistake, inadvertence, surprise, or *excusable neglect*; . . . or

---

[10] *Phillips v. Siano*, 1999 WL 1225245, *2 (Del. Super. Oct. 29, 1999) (citing *Battaglia v. Wilm. Sav. Fund Soc'y*, 379 A.2d 1132, 1135 (Del. 1977); *Model Fin. Co. v. Barton*, 188 A.2d 233 (Del. Super. 1963); *Kaiser-Frazer Corp. v. Eaton*, 101 A.2d 345 (Del. Super. 1953)).

[11] *See Keener v. Isken*, 58 A.3d 407, 409 (Del. 2013);  *Green Tree Servicing LLC v. Hawkins*, 2013 WL 5314996, *1 (Del. Super. Sept. 6, 2013) (quoting *McMartin v. Quinn*, 2004 WL 249576 at *1 (Del. Super. Feb. 3, 2004); *Phillips*, 1999 WL 1225245 at *2 (citing *Weeks v. Wilson*, 577 A.2d 755 (Table) (Del. 1990)).

[12] *Green Tree Servicing LLC*, 2013 WL 5314996, *1 (quoting *McMartin*, 2004 WL 249576, *1); *Phillips*, 1999 WL 1225245 at *2 (citing *Keystone Fuel Oil Co. v. Del-Way Petroleum, Inc.*, 364 A.2d 826, 828 (Del. Super. 1976); *Cohen v. Brandywine Raceway*, 238 A.2d 320 (1968)).

[13] *Phillips*, 1999 WL 1225245 at *2 (citing *Weeks*, 577 A.2d 755).

6

(6) any other reason justifying relief from the operation of the judgment (emphasis added)."[14] Under Rule 60 (b) (1), the Court may set aside Defendant's judgment for excusable neglect. Carelessness and negligence do not automatically qualify as "excusable neglect,"[15] since such showings, without a legitimate reason, may be deemed insufficient to justify relief.[16] This is because "negligence may be so gross as to amount to sheer indifference, and to open and vacate a judgment upon such excuse would cease to give meaning to the words 'excusable neglect.'"[17] When determining whether the Defendants have demonstrated excusable neglect, the Court may look at all surrounding circumstances.[18]

"Excusable neglect has been described as that neglect which might have been the act of a reasonably prudent person under the circumstances."[19] According to *Phillips v. Siano*:

---

[14] Super. Ct. Civ. R. 60 (b).

[15] *City of Dover v. Hunter*, 880 A.2d 239, 244 (Del. Super. 2004) (citing *Cohen*, 238 A.2d at 325 (citations omitted)).

[16] *Id.*

[17] *Id.* (citing *Vechery v. McCabe*, 100 A.2d 460 (Del. Super. 1953)).

[18] *Keener*, 58 A.3d at 410 (Del. 2013) (citing *Dishmon v. Fucci*, 32 A.3d 338, 346 (Del. 2011)); *Schremp v. Marvel*, 405 A.2d 119, 121 (Del. 1979); *Hunter*, 880 A.2d at 244 (citing *Cohen*, 238 A.2d at 325).

[19] *Hunter*, 880 A.2d at 244 (citing *Cohen*, 238 A.2d at 325).

[a] party seeking to vacate a default judgment pursuant to Rule 60 (b) (1) must establish the presence of four essential elements: 1) that his conduct was that of a reasonably prudent person; 2) that the motion was not brought after an unreasonable delay; 3) the presence of a meritorious defense; and 4) the lack of substantial prejudice to the non-moving party.[20]

If a party is unable to satisfy the above stated elements of excusable neglect, he may obtain relief under Rule 60 (b) (6). The Court may set aside a judgment under that rule for "any other reason justifying relief from the operation of the judgment."[21] Rule 60 (b) (6) is an independent ground for relief with a completely distinct standard from 60 (b) (1).[22] Because 60 (b) (6) is a last-ditch-effort to set aside a judgment, it is an extraordinary remedy, in that it allows the Court to invoke its inherent judicial powers necessary to accomplish justice.[23] As such, the standard Defendants must satisfy to obtain relief under Rule 60 (b) (6) is the extraordinary circumstances test.[24] "Extraordinary circumstances do not exist where the conduct of the moving party has been intentional or willful. A Rule 60 (b) (6) motion, although designed to protect

---

[20] *Phillips*, 1999 WL 1225245 at *3 (citing *Concors Supply Co., Inc. v. Berger*, 1988 WL 130437 (Del. Super. Nov. 9, 1988)).

[21] Super. Ct. Civ. R. 60 (b).

[22] *Phillips*, 1999 WL 1225245 at *4 (citing *Keith v. Melvin Joseph Constr. Co.*, 451 A.2d 842, 847 (Del. Super. 1982)).

[23] *See Hunter*, 880 A.2d at 244.

[24] *Phillips*, 1999 WL 1225245 at *4 (citing *Jewell v. Division of Soc. Serv.*, 401 A.2d 88 (Del. 1979); *Keith*, 451 A.2d 842).

8

against injustice, cannot be used 'to relieve a party from the duty to take legal steps to protect his interests (citations omitted).'"[25]

## Service and Receipt of Documents via Mail

Judges of the Delaware Superior Court are unable to hear and decide cases in which one of the parties is a nonresident of Delaware unless that Court has personal jurisdiction over such nonresident. According to 10 *Del. C.* § 3104 "[a]s to a cause of action brought by any person . . . [the Delaware Superior Court] may exercise personal jurisdiction over any nonresident . . ., who in person . . . [h]as an interest in, uses or possesses real property in the State."[26]

Service of process, and indeed service of documents and items dealing with the cause of action, may be effectuated to nonresidents "[b]y any form of mail addressed to the person to be served and requiring a signed receipt."[27]  "When service is made by mail, proof of service shall include a receipt signed by the addressee or *other evidence of personal delivery to the addressee satisfactory to the court* (emphasis added)."[28]

---

[25] *Id.* (quoting *Opher v. Opher*, 531 A.2d 1228 (Del. Fam. 1987)).

[26] 10 *Del. C.* § 3104 (c) (5).

[27] 10 *Del. C.* § 3104 (d) (3).

[28] 10 *Del. C.* § 3104 (e).

9

"Generally speaking, the law requires that notice be actually received in order to be effective."[29]  "If the mailed notice is in fact not received, then the notification is without any legal effect."[30]  However, there is a rebuttable presumption, sufficient to establish an addressee's receipt of a notice or letter, that if mail is properly addressed and mailed, with prepaid postage, that it was received by the party addressed.[31]  That presumption may be bolstered or weakened "by proof of attendant pertinent circumstances."[32]  "Merely denying receipt does not rebut the presumption . . . ."[33]  Delaware courts have found this presumption to qualify as satisfactory evidence delivery.

## Application

Defendants here are not entitled to relief from judgment under either Rule 60 (b) (1) or (6).  The Court finds the Defendants are incapable of satisfying the first essential element necessary to obtain 60 (b) (1) relief.  This is because Defendants'

---

[29] *Windom v. Ungerer*, 903 A.2d 276, 282 (Del. 2006) (quoting *State ex rel. Hall v. Camper*, 347 A.2d 138–39 (Del. Super. 1975)).

[30] *Id.*

[31] *See Windom*, 903 A.2d at 282 (quoting *Camper*, 347 A.2d 138–39); *Graham v. Commercial Credit Co.*, 194 A.2d 863, 865 (Del. Ch. 1963) (citing 31A C.J.S. Evidence § 136).

[32] *Windom*, 903 A.2d at 282 (quoting *Graham*, 194 A.2d at 865); *see also Graham*, 194 A.2d at 865 (citing *E. Clemens Horst Co. v. Grand Rapids Brewing Co.*, 273 N.W., (Mich. 1937)).

[33] *Windom*, 903 A.2d at 282.

conduct regarding this cause of action has not been that of a reasonable prudent person.[34] Plaintiff maintained in its briefing that Defendants did not act reasonably because they "failed to comply with the terms of the Ground leases . . . ."[35] This is irrelevant since these were the actions causing Plaintiff to file the Complaint, separate from how Defendants have managed their part in this cause of action. What is relevant is the fact that Defendants ignored notice letters, failed to file an Answer to Plaintiff's Complaint, failed to respond to Plaintiff's Motion for Default Judgment, and failed to appear at the hearing on said motion. A reasonable prudent person, if facing default judgment that may cause him to pay over $4,000 and loss of a real property interest, would not have been blind to reality.

Though Defendants are unable to establish this first element, alone defeating their motion, the Court will discuss the remaining elements for a Rule 60 (b) (1) motion briefly. Defendants have satisfied the second element of 60 (b) (1), i.e. there

---

[34] Though Defendants are *pro se* and would thus normally be given leeway in preparing and presenting their case, *See Buck v. Cassidy Painting, Inc.*, 2011 WL 1226403, *2 (Del. Super. Mar. 28, 2011) (citations omitted), that leniency is inapplicable here because such latitude would eviscerate the reasonable prudent person standard. *Freibott v. Miller*, 2012 WL 6846562, *1 (Del. Super. Oct. 26, 2012) (citing *Vick v. Haller*, 522 A.2d 865 (Table) (Del. 1987) ("While *pro se* litigants may be held to a somewhat less stringent standard in their written submissions than submissions drafted by lawyers, a party appearing *pro se* must adhere to Court rules and procedures."); *Lorenzetti v. Hodges*, 2012 WL 1410103, *3 (Del. Super. Jan. 27, 2012) ("Because Lorenzetti appears pro se, his pleadings will not be rejected because of lack of legal sophistication. However, the *defendants' rights will not be adversely affected by departure from the procedures and standards required by all litigants* (emphasis added).").

[35] Pl. Response ¶ 19.

11

was no undue delay in filing their motion for relief. Rule 60 (b) (1) does not mandate a filing deadline for a relief from judgment motion; the standard is instead that the aggrieved party files it without unreasonable delay.[36] It is helpful to look at filing deadlines for motions for reargument, motions for new trial, and appeals when evaluating whether the movant has filed his motion to vacate default judgment without unreasonable delay.[37] Plaintiff asserts that a two (2) week delay is unreasonable, and thus that Defendants have not satisfied this element. However, the Court finds that a two (2) week delay, given that Defendants are nonresidents of Delaware and are acting *pro se*, is not unreasonable. Looking at the filing deadlines for a motion for new trial, which is ten (10) days, a motion for reargument, fifteen (15) days, and the filing deadline for appeals to the Delaware Supreme Court, thirty (30) days, Defendants would have only been late on filing for a new trial. Using these filing constraints as guidelines, Defendants were not unreasonably late in filing their motion.

Next, Defendants have not presented a meritorious defense to Plaintiff's Complaint. Defendants never filed an Answer stating a defense, and their Motion to Vacate fails to provide one. As such, Defendants have not satisfied the third element

---

[36] *See Phillips*, 1999 WL 1225245 at *4.

[37] *See Schremp*, 405 A.2d at 121.

for Rule 60 (b) (1).

Lastly, the Court finds the relief requested by Defendants would substantially prejudice Plaintiff. According to Plaintiff, the properties are in a state of disrepair, subjecting Plaintiff to potential liability for taxes and fees, the payment of which, according to the lease contract, were not part of its obligations. As such, to reopen the case would substantially prejudice Plaintiff, delaying receipt of the monies it is entitled.

Defendants are likewise unable to receive relief under Rule 60 (b) (6) since they have not shown the occurrence of extraordinary circumstances. Not receiving documentation and notices indicating their lease would be terminated, or notifying them that they were being sued in Superior Court, may qualify as an extraordinary circumstance, allowing Defendants to receive relief from judgment. However, Defendants have failed to rebut the presumption of receipt of such documents and admit to receiving one of the notices.

Notices of the impending lease termination and the Complaint were properly addressed and mailed to Defendants with postage at the above listed Maryland address. As such, there is a presumption Defendants received the aforementioned documents. Other than a denial of receipt, which is inadequate to rebut the presumption of delivery, Defendants have failed to mention anything in their Motion

to Vacate sufficient to reopen their case. Further, Defendants admit in their Motion to Vacate that they did, in fact, receive notice that the hearing on default judgment, originally scheduled for April 17, 2015, was rescheduled to April 16, 2015, albeit they allege to only have received it two (2) days before the new hearing date.[38]

Since Defendants did receive such documentation, their failure to respond to any of Plaintiff's notices or letters with regard to curing the breaches, their failure provide answers to both the Complaint and Plaintiff's Motion for Default Judgment, and their failure to appear at the hearing on April 16, 2015, despite receiving notice of a scheduling change, is intentional. Defendants willful decision not to take steps to protect their legal interests disqualifies them from receiving Rule 60 (b) (6) relief.

## CONCLUSION

Considering the foregoing, Defendants' Motion to Vacate is **DENIED**. An inquisition hearing will proceed, as scheduled, on June 17, 2015. Plaintiff's counsel's request for attorneys fees and costs will be considered at the hearing.

Very Truly Yours,

*/s/ Richard F. Stokes*

_____

Richard F. Stokes

---

[38] Pl.'s Motion to Vacate ¶ 5.

14